650 So.2d 157 (1995)
Steven SOTNICK, Appellant/Cross-Appellee,
v.
Lori SOTNICK, Appellee/Cross-Appellant.
No. 93-2857.
District Court of Appeal of Florida, Third District.
February 8, 1995.
*158 Ellen G. Lyons, Miami, for appellant/cross-appellee.
Rhonda A. Anderson, Miami, for appellee/cross-appellant.
Before NESBITT, COPE and GERSTEN, JJ.
COPE, Judge.
Steven Sotnick appeals a final judgment of dissolution of marriage. Lori Sotnick cross-appeals. We affirm in part and reverse in part.
The husband appeals the amount of child support he was ordered to pay for the support of the parties' two children. He argues that the trial court should not have imputed income to him over and above his actual current salary. We agree.
During the parties' six and one-half year marriage, the husband was employed as a radiology technician. Shortly before the wife filed for divorce, the husband was accepted into a dosimetrist training program at the University of Miami Sylvester Center. After a two-year period of on-the-job training, the husband will be eligible for a certification examination. On passing the examination the husband's income potential will be significantly higher than it was in his capacity as radiology technician.
The practical effect of undertaking this two-year training program is to reduce the husband's earnings during the two-year period. At the final hearing the wife contended that the husband's participation in this training program should be viewed as voluntary underemployment and that additional income should be imputed to him, based on his higher earnings in previous years. The wife also contended that the husband should be able to obtain some part-time work on weekends in addition to the husband's responsibilities in the two-year program. The trial court agreed with the wife's position and imputed an additional $8,000 per year in income, over and above the $33,000 salary paid by the training program. The husband's responsibility for child support was then computed based on the $41,000 figure.[1]
As stated in Arce v. Arce, 566 So.2d 1308 (Fla. 3d DCA 1990):
We hold that a spouse who suffers a temporary reduction in income to complete his education has not voluntarily reduced his income. A spouse who demonstrates his good faith and whose conduct is reasonably calculated to ensure the future economic well-being of the persons to whom he owes a duty of support may be temporarily excused from having attributed to him the income which he is capable of earning, but which he is currently not earning... .
Our opinion should not be read to excuse a spouse from making support payments, but merely to allow a trial court the discretion to fashion a schedule of payments that will take into account the needs of the family and the current ability of the husband to pay, allowing for future actions for modification once the spouse has realized the higher earning capacity.
... .

*159 When the husband completes his fellowship and his salary increases, the wife may petition the court for a modification in support payments based solely on an increase in the husband's income.
566 So.2d at 1311-12 (footnotes omitted; emphasis in original);[2]see also § 61.30(1)(b), Fla. Stat. (1993); Miller v. Schou, 616 So.2d 436, 438 (Fla. 1993) ("[A]n increase in ability to pay is itself sufficient to warrant an increase in child support... .").
The child support level in this case should have been based on the salary level the husband is currently receiving from the University of Miami Sylvester Center. See id.; see also Milligan v. Addison, 582 So.2d 769, 770 (Fla. 3d DCA 1991).[3] The child support award is therefore reversed and remanded with directions to recalculate the child support amount based on the husband's actual income, not the imputed income. Modification should be granted as the husband's income increases. Given that the husband is receiving an interim reduction in the child support obligation on account of his reduced income during the training program, the husband has a corollary obligation to promptly notify the wife of his completion of the training program and subsequent salary increases.[4]
We have considered the husband's claim of error with regard to the rehabilitative alimony award and the equitable distribution award. We find no reversible error on those points.
The husband next contends that the trial court should have included in the final judgment specific instructions about the religious upbringing of the son. During the course of the marriage, the parties made a written declaration to the Rabbinical Assembly, Southeast Region, stating in part that the parents have "declared their intention to enter their minor son into God's covenant with Israel. The parents have also solemnly undertaken to bring up their son in the Jewish faith; to give him a Jewish education in order to observe the Mitzvot of the Torah."[5] The husband contends that the document constitutes a contract and should be incorporated by reference in the final judgment. The trial court declined to do so. We agree with the trial court.
In this case the parties stipulated that the parents would have shared parental responsibility. Under Chapter 61, Florida Statutes, "`Shared parental responsibility' means a court-ordered relationship in which both parents retain full parental rights and responsibilities with respect to their child and in which both parents confer with each other so that major decisions affecting the welfare of the child will be determined jointly." § 61.046(11), Fla. Stat. (1993). The parties also stipulated that the husband, who is Jewish, will have custody of the children for Jewish holidays, and the wife, who is Christian, will have custody of the children on Christian holidays. The respective holidays were agreed upon by the parties and are set forth in the judgment. It is obvious that the parties contemplate that the children will be exposed to, and learn about, the religions of each parent. The parties do not contend otherwise.
The principle of shared parental responsibility applies to the religious upbringing of the children, just as it applies to the other "major decisions affecting the welfare *160 of the child... ." § 61.046(11), Fla. Stat. (1993).[6] The parties are to confer on such matters and reach agreement thereon. If the parties reach impasse, then the dispute is presented to the court for resolution. See Tamari v. Turko-Tamari, 599 So.2d 680, 681 (Fla. 3d DCA 1992); Vazquez v. Vazquez, 443 So.2d at 314.[7] In the event the court must resolve an impasse, the test to be applied is the best interests of the child. See § 61.13(2)(b)(1), Fla. Stat. (1993).
The husband urges that since both parents signed the undertaking with the Rabbinical Assembly, it follows that the document should be incorporated into the final judgment. Legal precedent is to the contrary.
"The great weight of legal authority is against enforcement of such [religious training] agreements over the objections of one of the parties." Zummo v. Zummo, 394 Pa.Super. 30, 574 A.2d 1130, 1148 (1990); see also In re Marriage of Bennett, 225 Ill. App.3d 828, 167 Ill.Dec. 308, 587 N.E.2d 577, appeal denied, 145 Ill.2d 631, 173 Ill.Dec. 2, 596 N.E.2d 626 (1992). The statutory procedure for shared parental responsibility is controlling instead.
The husband contends that this court has effectively held such an agreement to be enforceable in Ainsworth v. Schoen, 606 So.2d 1275 (Fla. 3d DCA 1992). The husband's argument on this point is misplaced. Ainsworth was decided entirely under the Florida Arbitration Code, Chapter 682, Florida Statutes. In Ainsworth, the parties had entered into a valid commercial contract which contained an arbitration clause. The arbitration clause specified that disputes under the contract would be submitted to rabbinical arbitration. Such an agreement is enforceable under the Florida Arbitration Code. Ainsworth has no bearing on child custody matters under Chapter 61, Florida Statutes.
By cross-appeal the wife raises a related issue. At the time of the final hearing, the parties had reached impasse over the selection of a preschool for the daughter. The wife had enrolled the daughter in a Christian preschool. The wife contended that the choice of preschool was made primarily because it was the least expensive preschool available. The husband urged that the daughter should be in a nonsectarian preschool and agreed to pay any additional expense that would be entailed. The trial court ruled that the daughter could complete the current school year at the existing preschool, and that the child must be enrolled in a nonsectarian preschool thereafter.[8] As the parents were deadlocked on the selection of a preschool, the impasse was properly presented to, and resolved by, the trial court. See Tamari, 599 So.2d at 681; Vazquez, 443 So.2d at 314.
The child support award is reversed and the cause remanded with directions to recalculate the child support award in accordance with the husband's current net income, in conformity with section 61.30, Florida Statutes. The dissolution of the parties' marriage is affirmed, and the balance of the final judgment is affirmed.
Affirmed in part, reversed in part, and remanded.
NOTES
[1] The trial court made a mathematical error in applying this imputed income figure. For purposes of the child support guidelines, the trial court applied this gross income figure to the child support guidelines. The child support tables, however, call for application of a net income figure, not a gross income figure. See § 61.30(6), Fla. Stat. (1993).
[2] Arce involved alimony payments, see 566 So.2d at 1312 & n. 3, but the reasoning regarding training programs applies to child support as well.
[3] We have considered the wife's contention that the husband should obtain additional part-time employment while engaged in the training program. It is clear from the testimony of the husband's supervisor that such outside employment during the two-year training period is actively discouraged. We do not see an adequate basis in this record on which to conclude that outside employment is feasible during the two-year program, nor a basis on which to estimate an amount of earnings reasonably attainable. See generally Arce, 566 So.2d at 1310.
[4] The husband also argues that the wife should have been allocated a percentage share of the child support responsibility, even though her prior work history was sporadic and she is presently enrolled in a course of study pursuant to a rehabilitative alimony award. As this issue was not raised in the trial court, we do not consider it.
[5] No similar agreement exists for the parties' younger child.
[6] As explained in Vazquez v. Vazquez, 443 So.2d 313 (Fla. 4th DCA 1983), review denied, 451 So.2d 851 (Fla. 1984), the enactment of this provision changed earlier law which had "held that decisions of that nature [religious upbringing] are for the parent to whom custody of the children has been awarded." Id. at 314.
[7] In the extreme case where shared parental responsibility proves unworkable, the court has authority to designate one parent as having the power to make the final decision regarding a particular aspect of child-rearing. See Tamari, 599 So.2d at 681; Martinez v. Martinez, 573 So.2d 37, 41 (Fla. 1st DCA 1990), review denied, 581 So.2d 1309 (Fla. 1991).
[8] We interpret the final judgment as accepting the husband's undertaking to pay the child's preschool expenses upon enrollment of the child in a nonsectarian preschool.